May it please the court. We are appearing on behalf of the warden, who is the appellant in the case this time around. And may I reserve three minutes, please, for rebuttal? Certainly. Manage your own time. Thank you. The principles governing habeas review under ADPA have been exhaustively and repeatedly stated by the U.S. Supreme Court. Let me just briefly mention or summarize three points that I think are critical. They're interrelated, and I think they help us to the right decision in this case. First of all, deference does not mean abdication. But it does Can I cut through this for a minute? I started to wonder, and I then looked into whether deference applies when, in this instance, the ineffective assistance issue arises largely as a cause and prejudice question. Is that right? And it was decided by the California courts, at least in part, as a cause and prejudice question. I partially agree with that, but I And that might matter as to deference. There's actually a circuit split. We actually haven't decided whether you have ADPA deference to a question that is decided in the cause and prejudice context as opposed to on the merits for granting relief. So it would be helpful in your exposition if you talked about that. And it's a good question, and I thought a lot about it. And I can only tell you what I think is the application here. There's precious little of Mr. Baldwin's, I'll call him petitioner just for clarity, a petitioner's case that isn't dependent on a claim of ineffective assistance of counsel. That is, where the argument was failure to object to prosecutorial misconduct, an argument or an allegation of misconduct, and that was waived, or the state court held that it was waived. The allegation was then that it was ineffective assistance of counsel. In many respects, IAC was raised in direct appeal, but then, of course, a petitioner raised, as I understand it, as I believe all of his IAC claims in his subsequent petition to the state supreme court. So the state's position is that he has preserved all of his claims of ineffective assistance of counsel. And, frankly, I think in petitioner's brief, the appellee's brief, he helpfully indicates that his central claim here is ineffective assistance of counsel. There is some, my characterization of an add-on or a short prosecutorial misconduct that is not interrelated with the ineffective assistance. But this case is fundamentally, I believe, the way it's been briefed, an ineffective assistance of counsel claim. And so in that respect, I don't think the cause and prejudice is determinative in this case. In other words, if the prosecutor committed misconduct and counsel failed to object, and he should have objected, then that was, it could sustain an ineffective assistance of counsel claim. Does that? So you're essentially saying that you're dropping any procedural default claims and we should just assume everything's in the merits, some of which is to your advantage because then we do it all instead of otherwise. Yes. So, again, just to, we've talked a little bit about, you know, deference doesn't mean application, but it does mean that relief may be granted only to remedy extreme malfunctions in the state court process. The second point is that if there is any possibility of fair-minded disagreement, the benefit must be given to the state court and the writ denied. And the third point is that the broader the controlling precedent, that is the more general the standard of the constitutional standard that we're talking about, the greater the leeway that state courts have in fairly interpreting and implying this precedent. And that's important in this case because, of course, prosecutorial misconduct and ineffective assistance are very general standards entitled to the broadest leeway. In fact, the Supreme Court has emphasized that an IAC claim is entitled to what is called double deference. And given all those principles, just to boil it down, there is a laundry list of failures to object. And in this case, we have counsel's statements as to why or why he didn't think the statements that were being made or the testimony that was being introduced didn't seem to bother him. And I have to say giving deference, double deference, in many of his answers that did not seem to be a strategy decision, it seemed to be an ignorance decision or a failure to see or understand or comprehend the highly prejudicial impact of statements that linked his client, perhaps, to a murder of a precipient witness, testimony that allowed very abusive, misogynistic information to be presented to the jury through a jailhouse telephone call, and then references at the end, which really troubled the district court, so if the jury were to not convict this guy, good luck in East Oakland, because the implication being anybody will be able to get away with the kind of blatant murder that he committed here. Now, the prosecutor said, oh, but of course, you know, you have to deal with the facts of this case. Having tried cases myself, I understand that some of these calls can be made in the heat of the moment. You have to make quick judgments. But some of these came up on motions in limine, and some of them were pretty egregious, and he didn't seem to understand in the first place why he should have objected. That's not a strategic call. It's just not being attuned to what he's supposed to do under the Constitution to provide effective assistance. So how do we deal with that? I understand the Supreme Court has not been friendly to our second-guessing California prosecutions, but as you started out by saying, we don't abdicate, and this is a very tough case. So I think that the way that one looks, then, at these issues is to ask could the ‑‑ has the state court given any guidance on how a fair-minded juror, jurist, could view this? And in many respects, in fact, most respects cited extensively in our brief, The state court does go through the failures to object to closing arguments, almost point by point. The real problem to me is the accumulation. I mean, that is, when the question is whether a ‑‑ or whether this was sort of beyond the pale in terms of representation, the fact that any one of the decisions not to object or ask for a limited instruction could be justified doesn't really tell you whether any competent lawyer would have let this pattern go on through the entire trial until you end up with this closing ‑‑ part of the closing argument, which was clearly impermissible. In other words, it's the fact that the trial lawyer didn't do this once, twice, or three times, but did it so many times with regard to things that should not have been allowed in, that seems to me to color. And it's that piece of it that it doesn't seem to me the state court's considered at all. Let me respond to that, because I do think the state court's considered it. Here is the issue, as I see it, and I think this is also partially responsive to Judge Fischer's question. It is true that counsel did not object during closing argument. And he says in his declaration that he does not like to object in closing argument. But he also said I didn't see anything wrong with this. Now, I disagree with that. I mean, there were times that he said that he didn't think that ‑‑ that he thought that the jury would understand it as hyperbole, that he thought that they would understand that because they had been repeatedly told that statements of lawyers were not evidence. I don't think that's an unreasonable determination, particularly because what I disagree with, Your Honor's question, is that the feeling that trial counsel sat on his hands. Well, here's what he said. Here's what he said. He said, I'm not sure if it was proper argument, but I was not troubled by it. And in any event, I did not object. I view this broad-based argument as generic rhetoric, which we have condemned and the Supreme Court has condemned, and not particularly inflammatory. Now, how he could say that about, you know, good luck East Oakland if you don't convict this guy. He was not arguing the evidence, just the implications of the jury's decision. Well, that's ignorance. I mean, the implications of the jury's decision of not to convict is the very constitutional issue that he should have objected to. The prosecutor is supposed to be arguing the evidence, not the implications of acquitting this guy. And he said, then he says, it certainly was less objectionable than other things that the prosecutor said. Well, that may be. I mean, there were some other pretty egregious things he didn't object to either. I agree that defense counsel didn't object to closing argument. As pointed out. It's not that he didn't object. I just read his statement as to why. As to why he didn't object. But he also, I mean, that's not the full statement. I understand. And so unless we, unless the court says that it was not a constitutionally viable strategy in this case to not object and instead to sort of take the high road and say, we'll let the judge take care of that when he tells the jury that they have to decide the case on the evidence and the statement of attorneys on evidence. I don't think that one can say that that's necessarily ineffective assistance of counsel filtered through the state court's really thorough discussion of these instances. Even the, you know, its lawlessness, you know, shouldn't have said it. I'm not standing here. It's not my word. The lawlessness. The law, the comments, I was referring to Judge Fisher's comments about the closing arguments about it will be lawlessness out there in East Oakland. Right. But there's a, not to interrupt, but there's an aspect that Judge Berzon discussed with you that disturbed the district court, and it's just the accumulation of all of this. I mean, you have the high rhetoric. Then you have the vouching statements. I brought all the witnesses I could, implying that, you know, defense didn't call. I have reason, you have reason to believe me. And it just goes on and on and on. I mean, you've tried cases, you know, closing arguments can get a little heated. You make a strategic decision sometimes to let them go. But this just seems so far over the pale that I just can't conceive of anybody not objecting on that ground. Well, the California Court of Appeal discussed the cumulative impact. It discussed it in a sentence. Well, in a paragraph. Essentially, it said, because none of these amount to anything, therefore, the accumulation doesn't, which is really not what we're saying. We're, in this instance, the whole may well be more than its parts. Understood. Understood. But I just have to return to the fact that deference has to be done through the filter. We have to, the court would have to start, or the district court should have started with the analysis of, did the state court's first statement on this, that, for example, on the comments that Judge Fischer was asking me about, that the prosecutor soft-pedaled them and said, of course, you have to decide it on the facts of this case. The state court analyzed that and said that they felt under the circumstances that the jury would not have been misled. What about all the material about the dead witness? I mean, I didn't, the notion, I understand there's some distinction between whether the purpose for which it was being used. A, there was no instruction given, or asked for it. But more than that, the statements were not subtle in terms, it seems to me. They were designed to say that this person either killed him or had him killed. And it was pretty direct. And you can parse the words, but it's obvious what the impression of the jury is. If you could parse the words, the state court could have reasonably parsed them differently than the district court parsed them. And I see I'm almost out of time, and I would like to reserve even a few seconds. I'd like to ask a question, and we'll give him more time. Is parsing the words the way to do this? Yes.  I mean, if the jury was to decide that this case was not a case of a juror, i.e., if the obvious as evidenced by his final argument, which is why I think you have to look at it as all of a piece. He was obviously telling the jury that he meant the jury to understand that this guy had had the witness killed. He meant him to understand. I don't know how to respond to that other than to say that that's not what the record says. He never says. We've cited the entire quote is in the record. The prosecutor never says that he had Hicks, is the name of the witness, or Bone, killed. He does recite that all these other witnesses know what happens, and Bone is dead. All right? Now, is that an accusation that the defendant killed Bone? It's not what it says. And the Supreme – the State court of appeal didn't interpret it that way. Unless there's no possibility that the State court could have been fair-minded about that statement, then it can't be the underpinning of habeas relief. Thank you, counsel. Mr. Henry, we'll give you a little time for a thought. Thank you. Mr. Ketchins. Good morning, Your Honors. May it please the Court. My opponent says that federal habeas relief is reserved for cases where there's been a real breakdown of the adversarial process and extreme malfunction such that the defendant did not get a fair trial. Well, this is such a case. As the Court's questions have already betokened, this is a case in which an extremely able prosecutor who, in his zeal to convict the petitioner, of ethical and lawful prosecutorial conduct was pitted against a hapless defense lawyer who has admitted being ignorant of fundamental principles of criminal trial practice. Given the record here, it is not surprising that the State does not make much of an effort to refute our underlying constitutional claims. Rather, the State mostly just wants to talk about deference. Well, that is the essence of habeas, and fortunately or not, and double deference. And I think we may get to triple deference from the Supreme Court one of these days. Yes. So how do you get over that? I mean, so the defense counsel says, well, I don't like to object during closing arguments. I don't like to irritate the jury. You didn't quite say that, but that's what a lot of people do. Why isn't that a valid strategic choice to which we owe deference if it's not a case on direct appeal? Okay. So your question, Judge Thomas, has two or three levels, and I'll try and address each of them. As for the valid strategic choice, as Judge Fisher pointed out, much of that valid strategic, much of that strategic choice was based on trial counsel's ignorance of basic principles, like that it's not okay to make an appeal to protect the community from the defendant, but it's, that it actually is important that the prosecution witnesses were getting, were facing an enormous amount of jail time, prison time, if they didn't cooperate with the police. He didn't think that that was a significant point on their credibility. He also didn't think that there was anything, he thought it was peripheral that there was evidence presented and then argued about threats that was completely unfounded in terms of any connection to the defendant. He said, well, I thought this was peripheral. Well, case after case, as I think the phrase was, an evidential harpoon, that this is such potent evidence that without a limiting instruction, there's no jury that's going to be able to just go to the substance of the case and ignore these threats. This is, I think, a perfect example of what Judge Posner so memorably said, meant when he said, you know, in a given case, you can decide not to object to closing argument on a point or another, but to have a policy of not objecting is forensic suicide. And that's what occurred here. He gave up. One particular little sub-piece of all this, which was apparently one of the things that wasn't in June was to, apparently, one of the things that, there was an exculpatory statement with regard to Hicks, which wasn't mentioned. Could that have come in? The exculpatory statement? Oh, certainly. Why? Because it... I mean, that seems significant to me, very significant, if it could have come in. Because the allegation, the assertion was that Hicks was killed by the defendant. Hicks was actually the defendant's best friend. But to... Implication. That was the strong implication. I do hope to get to that, because I disagree with counsel's characterization in that regard. Because Hicks was going to implicate the defendant. It thus becomes extremely important. So, and that would be true, I suppose, whether or not it was Baldwin who killed him or had him killed, because the whole point, whether, I mean, it's very vague, this notion that it's the state of mind of the witnesses, but it would still be relevant to that, I suppose. It certainly would. I would like to get back to Judge Thomas's question about deference. Counsel commendably notes that deference isn't abdication. But deference, and that deference has its limits, but deference runs into a solid wall when the State Court bases its decision on factual conclusions that are belied by the record. And in that regard, you know, I'll point out that almost the entirety of counsel's argument, you know, is based on Harrington v. Richter. It goes to 2254d-1, whether this is an unreasonable, you know, application of clearly settled Supreme Court law. Our argument throughout, and I will say that there were plenty of those in the State Court's opinion, but the principal vice of the State Court's opinion is that it was consistently founded on factual conclusions that were insupportable in light of the record. That is not Harrington v. Richter. That's 2254d-2. And that was the foundation of the district court's decision. The, to give an example, the appeal to, you know, don't subject the citizens, protect the community, don't send this message. The State Court said, well, you know, if there was a problem, it was diluted because he said, because he also said, treat this case individually. I believe that that in itself is an unreasonable determination of the facts. The only reasonable factual conclusion is that that was a cynical thing that the prosecutor said specifically to give a fig leaf to the State Court. But the State Court also said, but besides that, you know, this was the only objectionable thing that the prosecutor said. He, every, the rest of his argument was entirely based on, entirely just went to the evidence. Five pages later in the State Court's own opinion, it says that something else that the prosecutor said was improper, that it was misconduct. And I'm referring to the, his argument about the defendant running a star chamber, convening a star chamber and intimidating and terrorizing witnesses. In the same opinion, the State Court said that was improper, but the, but it was waived because trial court didn't, because trial counsel didn't object. And then it goes on to, frankly, make up facts to explain why the trial court did not object. I'm sorry, trial counsel did not object. You know, similarly, there was the controversy about whether Petitioner had left for Modesto in a rental car before the shooting took place. And a centerpiece of the prosecutor's argument was that he had, quote, cracked the alibi by proving that no car had been rented before the killing on July 1st. Game set and match, he said. And to seal the argument, the prosecutor suggested to the jury that even though his own witness testified to the contrary, that he knew personally that his office had checked all pertinent records and that no car had been rented. So this, what the State Court says about this is, quote, the prosecutor did nothing more than argue a reasonable inference from the failure of the defense to present logical witnesses. But that's not what the prosecutor said. What he said was, quote, you know, this irritates me no end. We checked every car that was rented. We brought the car from, the record from July 2nd, the one from June 19th. There was nothing rented in between. This wasn't a comment on the failure of the defense to produce evidence. This was unsworn, unsupported testimony. But then they went on to say that if it had, if the objection had been made, then the prosecutor simply could have gotten the same evidence in another way. So it would have been a futile objection in that sense. And the counsel said, you know, I figured it wasn't that important. So how can we second guess on a double deference standard in any event? I mean, that is a kind of a judgment one could make. Yeah, he snuck one in. It's misconduct. He's testifying. But if I object, he's just going to cure it, and so it will be the same thing. Now, the state court also said, besides, you know, Baldwin could have brought in his own witness. He didn't. But that was the implication he was trying to create. Well, I'd like to respond to that. Yeah. The prosecutor couldn't have brought in other evidence. This was the end of his closing argument. The evidence was closed. Judge Fischer means he could have re-argued it. He could have re-argued it. But what he would have had to re-argue is, well, you know, we didn't actually check every record. There is no evidence about whether a car was rented on July 1st. We'll ask you to infer that none was rented. There's a reason he didn't make that argument, and the reason is that that was a hole in his case, and he chose to cover that hole by ‑‑ What I was saying is that the counsel said he didn't object, and he had a rationale for it, which was ‑‑ I'm sorry. At least that's what I thought he said. He said if I had objected, he would have just turned around and brought it in another way. No, he didn't say ‑‑ That was the court. That was what the court of appeals said. That's not what counsel said. Counsel said, well, you know, I relied on the jury. I relied on the jury hearing the instruction that the arguments of counsel are not evidence. Of course, we always rely on that to cure error. We say that. We say that the jury is presumed to understand and listen to and follow the instructions. That may not in the real world always play out, but that is the law, unfortunately. Well, that's not what ‑‑ with all due respect, Your Honor, that's not what this court always says. That's what this court says when there is, you know, run of the mill actual hyperbole or something. But when there is misstatement and misconduct, what the court said in Sanchez and in Weatherspoon, cases much like this in some respects, was the curative instructions such as that fail to neutralize the harm of improper statements by the prosecutor when they do not mention the specific statements of the prosecutor and are not given immediately after the damage is done. Well, I didn't mean to suggest that it applies across the board. What I did mean to say is that what you characterize as modest strain from the facts, actually we have had fairly egregious statements that, taken on their own, yeah, would be objectionable and should have been objected to, but then the court will give eliminated instruction, but it's usually contemporaneously. Right. Yeah. So there are a myriad of circumstances across our cases where we do rely on the notion that the jury will adhere to an instruction is that arguments of counsel are not evidence. And quite frankly, if we didn't follow that, then we would have a lot of cases where we'd be arguing here if counsel decides to make that call, and then we would disagree, say, well, no, you should have, because the jury needed to adhere it more contemporaneously. So that's the kind of analysis that I fear the Supreme Court would bring to this and say, look, Ninth Circuit, what are you doing? You're second-guessing counsel's decision to rely on an admonition that we often rely upon to decide other cases. Well, Your Honor, I'm short on time. I'm not intending to abdicate here at all. I understand. The, you know, it goes to the case law. Another way of looking at this is the case law that counsel cited about, you know, that it's okay to not object. Molina, it's okay not to object to closing argument. Also cases saying it's okay not to give a limiting instruction. If you look at Molina and the cases that follow it, what they say is, absent egregious misstatements, it's okay. Absent egregious misstatements, maybe it's reasonable to — Maybe a last question is related to this. One of the things that troubles me, and this may be unjust cynicism, is that another very good reason for not objecting once the cat is out of the bag is that the cat's out of the bag. In other words, it seems to me a lawyer can well say, look, these limiting instructions are just stupid and useless anyway. They're not going to do any good, so why should I interrupt the argument? I don't think the — I don't think the courts have relied on that, but that's partly my reaction to all of this, which is, so what if they'd given the limiting instructions? The real problem here is they're prosecuting of doing this stuff. Well — But the limiting instructions, since we're back up to the ineffective issue before we can get to the other, what about that problem? I'll point out that, Judge Burrson, what you're saying is sort of the exact opposite of what Judge Fischer was saying about the efficacy of — the presumed efficacy of instructions. I understand that. I understand we presume it, but nonetheless, I would assume that many lawyers stand there and say, what's the point? Well, the point is that — the point is that there is no way, there is no other way. And the case law says this. This Court has said it in Garceau and in Jeffries v. Wood. The only way to mitigate the harm done by egregious misstatements of this sort, of facts outside of evidence, the improper use of propensity evidence, the improper use of threat evidence, the only way to mitigate this harm, short of excluding the evidence altogether, is to give the jury a limiting instruction. Not all of the problems have to do with limiting instructions, right? No, but the failure to object also, you know, falls into that category. One final question for me. Do you think that the Strickland standard is coextensive with cause and prejudice analysis from a federal basis? How does it differ, and what deference do we owe? It's an interesting question, and like Mr. Engler, I've given it a lot of thought. I was relieved when he basically conceded that it's not at issue in this case. My view is that, no, analytically it doesn't make sense to say that you have to demonstrate a constitutional error of ineffective assistance in order to make out cause and prejudice. I think that it makes sense to say the counsel simply and inexcusably dropped the ball, and that that makes out cause and prejudice. And because there's already a prejudice component, I think, you know, all you need to do to show cause and prejudice is to make out the first prong of the Strickland standard, that he did not perform as reasonable counsel would. Cause and prejudice otherwise takes care of the rest of it. Thank you, counsel. My version was a slightly different question, and I would like to comment on it as well. Yes, ma'am. That is whether the EDPA deference applies to ineffective assistance used for cause and prejudice purposes. Whether EDPA deference applies. In other words, and that was part of mine as well, if we have to defer or doubly defer on Strickland analysis, does that affect or confine our analysis of cause and prejudice or alter it? I don't see how it does. I mean, EDPA goes to the court evaluating the validity of a state court's decision. I mean, that's really what 2254 is about. Cause and prejudice isn't about that. Cause and prejudice is the court — Getting to the issue. Right. It turns out there's a circuit split on that question and some mutterings in this court. I am vaguely aware of that because of other cases. I am, again, really relieved that it's not an issue in this case. Thank you for your argument. Thank you very much. Mr. Engler, we'll give you two minutes. That should be fine. At the risk of opening up what may have appeared settled, I just have to, in reflecting further on this cause and prejudice question, I suppose my answer was on the assumption that any underlying misconduct claim could only be reached by an unaffected assistance claim for failure to object. Now, if we get to the situation, and our position was since the state court had reached every one of those misconduct claims, rejected most of them, decided that the ones that did constitute misconduct did not cumulatively amount to denial of a fair claim. Well, I don't think that's true. They reached some of them, and others of them, they simply said it wasn't an effective assistance not to object to them, and therefore they didn't reach them. I'll defer to you. That's not my recollection, but I don't recall exactly. I kind of mapped it out. So, yes, there are assignments to which they never actually reached. So if the ‑‑ If they reached the merits, surely it's happened. Right, right. But if the train of thought is, well, the state court correctly, you know, invoked a default for failure to object, and then they still got the merits wrong, but we can't reach the merits because of the failure to object, then we'd have a different situation on whether or not the failure to object, you know, we could just jump past cause and prejudice. I don't know if I'm making myself clear. The real question is whether if the reason they didn't reach it, the reason they said there was not cause and prejudice was because they said there wasn't ineffectiveness. Do we review that ineffectiveness decision deferentially or as we review any other cause and prejudice determination, which is not deferentially? And my answer to that is yes, because, of course, the state court is not reviewing cause and prejudice. They're reviewing ineffective assistance. Well, no, that's not so. As to what the court of appeals did, they were only reviewing ineffectiveness as a prelude to whether to reach the merits. But they did alternatively reach the merits. And then the next step. How about that time? The next step, though, is we've got the silent denial of the state supreme court that necessarily reached the merits on every one of these IAC claims. There's no IAC claim that comes to court without having been passed on as a merits decision by the highest state court. And so, again, I think I come back to the same point, is that cause and prejudice probably isn't where this case is going to turn. And with that, I'll submit it. Thank you. Thank you both for your arguments. Mr. Kutch and Mr. Anger, it's always a pleasure to have you in front of us.
judges: Thomas, Fisher, Berzon